# LYMAN MATHEWS

## vs.

# THE ST. PAUL AND SIOUX CITY RAILROAD COMPANY.

The defendant, without paying or securing any compensation therefor to the plaintiff, and without acquiring the right to make and maintain its railroad through his land by proceeding therefor as prescribed in its charter (*Laws of* 1855, *ch.* 24, *sec.* 5, 7), constructed and operated the same through plaintiff's pasture, and while so operating the same, with its engine and cars, ran against and injured a cow belonging to the plaintiff, and by him kept in said pasture. *Held*, that defendant was *prima facie* a trespasser, and liable for said injury.

Defendant alleged in its defence, that it went upon said land, and constructed its road thereon, and at the time of said occurrence was operating the same with its engine and cars, by and with the license and permission of plaintiff. *Held*, that if this were so, the law, nevertheless, in such case cast upon defendant the duty to prevent such permissive use of plaintiff's land from injuring plaintiff's cattle kept by him in said pasture, and that it was, therefore, liable for any injury occurring to them through such use; and that it was immaterial, either that defendant could not have avoided striking the cow after she was seen, or that by the defendant's charter, it was not obliged to fence its road.

The evidence in the case considered and held insufficient to prove such alleged license.

The defendant in running trains over the line of its road, through plaintiff's pasture injured one of his cows. This action was brought before a justice of the peace, to recover damages for such injury. On appeal, a trial was had in the district court for Blue Earth county, before a jury who found a verdict for plaintiff. The defendant made a motion

for a new trial which was denied, and from the order denying the same appeals to this court. The case is sufficiently stated in the opinion of the court.

Brown & Wiswell, for Appellant.

The evidence shows that no damages had been paid by defendant for right of way over plaintiff's land at the time the cow was injured, but that the matter was left to the commissioners. The case was still pending at the time of the injury complained of. Defendant claims:

I. That it went on to plaintiff's land for the purpose of constructing and operating its road, with the plaintiff's consent and was, therefore, not a trespasser, though no compensation had been made, as he had a right to waive, and did waive his right, as to requiring compensation to be first made. *Baker vs. Braman,* 6 *Hill.* 47 ; *Embury vs. Conner,* 3 *Comst.* 511 ; *Lee vs. Tillotson,* 24 *Wend.* 337.

II. That defendant constructed its road upon the premises of the plaintiff, and operated the same under and by virtue of a license from the plaintiff which had not been revoked at the time of the injury complained of, and was not therefore a trespasser. *Miller vs. The Auburn & Syracuse R. R. Co.,* 6 *Hill.* 61 ; *McAuley vs. Western Vt. R. R. Co.,* 33 *Vt.* 311 ; 2 *Bouvier's Institute,* 570 & 572 ; *Herman on Estoppel,* 437 & 528.

The case of *Miller vs. The Auburn & Syracuse R. R. Co.,* is directly in point, and so is the case of *McAuley vs. the Western Vermont R. R. Company.* The court in the latter case says, "If he ( the plaintiff ) has, in any sense, even for the shortest period, clearly given the company, either by his express assent or by his silence, to understand that he did not intend to object to their proceeding with their construction and operation, he cannot stop the work and especially the trains. If there was then

a waiver in fact, either expressed or implied, by acquiescence in the proceedings of the company to the extent of not insisting upon the payment as a condition precedent but continuing to let the damages be and remain a mere debt, it is impossible to regard the defendants in any sense in the light of trespassers." Mathews expressly assented to the construction of the road, and by so doing gave permission to defendant to run its cars, as the permission to construct implies permission to use and enjoy the thing constructed. But it had continued to run its trains over the premises from the time of the completion of the road in August or September, 1869, up to the time the cow was injured a year after its completion near plaintiff's house, and with his knowledge and without his forbidding it so to do, as shown by plaintiff's own testimony.

III. Defendant was not bound to fence its road till two years after its completion (and that time had not yet elapsed), and had a right to the exclusive occupancy of the track *Charter of the Co.* page 24, Sec. 2; *Sherman & R. on Negligence,* 528; 1 *Red. on Railways,* 500; *Troy & Boston R. R. Co. vs. Potter,* 42 *Vt.* 265; *Locke vs. First Division St. Paul & Pacific R. R. Co.,* 15 *Minn.* 350.

IV. There was no negligence on the part of the defendants but there was negligence on the part of the plaintiff and he can not therefore recover, *Stuck vs. Mil. & Miss. R. R. Co.,* 9 *Wis.* 213, 215; *Bennet vs. The Chicago N. W. R. R. Co.,* 19 *Wis.* 145; *Same Co. vs. Goss,* 17 *Wis.* 428; 2 *Hillard on Torts,* 369; 14 *Barb.* 366, not even if the defendant had been a trespasser. *Harper vs. Junger,* 15 *Wis.* 598; *Trow vs. Vermont Central R. R. Co.,* 24 *Vt.* 487.

The above cases show clearly that it was negligence on the part of the plaintiff to allow his cattle to run at large where they were liable at any time to get upon the track.

All the cases cited in the fifth point of plaintiff's defence

are upon especial statutes and not in point.   And in *Wheeler vs. Rochester, &c.*, 12 *Barb.* 227, the court holds that the owner should select his place of crossing.   In the case at bar, plaintiff had never asked for any crossing except the one made and had made no selection of a place for a crossing.

DANIEL BUCK, for Respondent.

I.   The point first raised by appellant is not well taken. Plaintiff only consented to the grading, and when the road was graded the company were to pay all damages, which was not done.   The appellant in abusing the right to grade, by running cars and locomotives over plaintiff's land, became a trespasser.   The doing of a harmless act, such as grading by permission, did not authorize defendant to operate cars and engines over the plaintiff's land.   The abuse of a license revokes the license. *Adams vs. Rivers, Barb.* 390 ; *Dumont vs. Smith*, 4 *Denio* 319.   Even when coupled with an interest the formalities essential to confer and retain such interest must be observed.   6 *East. R.* 602 ; 8 *East.* 310, *Note ;* 39 *Eng. C. L. R.* 19 ; *Bouvier's L. D. vol.* 2, *title License.*

II.   The uncontradicted evidence of plaintiff, is in direct conflict with the second point of appellant.   The company never asked, and plaintiff never gave permission or license to appellant to run or operate its cars or locomotives over his land.   The company was upon plaintiff's land as a trespasser, at the time the cow was injured.   No compensation had been made, secured or tendered him for the land taken.   Appellant, therefore, had no right upon the plaintiff's land, and no right to use it.   *Gray vs. The First Division of the St. Paul & Pacific Railroad Company*, 13 *Minn.* 315.

III.   Appellant in its third point assumes as a fact, that the question of fencing the railroad track was in controversy in

the court below. This is erroneous. The plaintiff made no claim or point, because of the non-erection of a fence by the appellant. In this connection, however, the respondent now suggests, that the jury having found, by their verdict, that defendant was a trespasser upon plaintiff's land, the company was chargeable with gross negligence as a trespasser, unless it fenced its track in a suitable manner.

IV. Defendant in the fourth point claims that there was negligence upon the part of the plaintiff. Even if appellant were running and operating its cars and locomotives over plaintiff's land by virtue of a license from him, yet the railroad having divided plaintiff's pasture lands into two parts, making it necessary for the plaintiff's cattle to cross the railroad track in going from the high to the low land to get water—the company would be liable for cattle killed in crossing such track—for such right to cross is not inconsistent with the right of the company, even where compensation has been fully paid. *Waterbury vs. Housatonic Railroad Company,* 23 *Conn.* 101; *Abbot's Digest Corporations, p.* 623, *No.* 210.

V. The charter of the company provides, "That said company shall construct and maintain all proper and necessary cattle guards and farm crossings over the line of said road." By fair construction of law, these cattle guards and farm crossings should have been constructed as soon as the company commenced running the cars and engines over the road; 30 *Vt.* 297; 7 *Mich.* 410. Yet the company have never erected any farm crossings or cattle guards at the spot where this cow was injured, nor at any other place upon plaintiff's premises, although the uncontradicted evidence shows the importance and necessity of such safeguards. This shows not only gross negligence, but a willful violation of duty, and renders the company liable for the cow killed, without any proof of negligence. *Snydom vs. Moore,* 8 *Barb.* 385; *Waldron vs. the R. &*

Mathews v. The St. Paul and Sioux City Railroad Co.

*S. R. R. Co.*, 8 *Barb.* 390.   This doctrine is affirmed, 3 *Kern.* 42; 39 *Me.* 273; 35 *N. H.* 356; 26 *Me.* 441; 13 *Wis.* 637; 18 *Ind.* 215; 10 *Iowa,* 268; *McDowell vs. N. Y. Central R. R. Co.,* 37 *Barb.* 195; *Brown vs. Milwaukee & R. R. Co.,* 21 *Wis.* 39; 18 *Wis.* 38.   As to right of plaintiff to have proper " farm crossings," and definition of same, see *Wheeler vs. Rochester & S. R. R. Co.,* 12 *Barb.* 227.

VI.   Negligence is a question of fact for the jury.   When the evidence is conflicting, or where inferences can be deduced from a variety of circumstances, it is a matter of right for the plaintiff to have the question of negligence submitted to a jury.   *Ernst vs. Hudson River Railroad Company,* 35 *N. Y.* 10; *Wakefield vs. Sixth Avenue R. R. Co.,* 38 *N. Y.* 49; 36 *Barb.* 230; 51 *Barb.* 10; 52 *Pa. St.* 382.   None of the brakemen were at their brakes when the alarm of danger was given. The evidence was conflicting as to the negligence of defendant.   And it is only when the question of negligence is entirely free from doubt, that the court may apply the law without action of the jury.   38 *N. Y.* 49.

VII.   Where there is gross negligence on the part of the defendant, the plaintiff is entitled to recover, even though plaintiff may have been careless.   *Abbot's Digest of Corporations, p.* 571, *No.* 613 *Subdivision* 4 *and cases there cited;* 9 *Ind.* 397; 21 *Wis.* 73; 13 *Ind.* 411.

VIII.   There were no errors of law that occurred during the trial, and the court will presume that proper instructions were given the jury.   The rule is too well settled to need authorities that the finding of a jury upon conflicting evidence will not be disturbed by an appellate tribunal.

*By the Court.*—RIPLEY, CH. J.—The defendant on the first of August, 1870, on the plaintiff's land, with its engine and cars ran against and injured a cow belonging to the plaintiff.

The defendant constructed its road through said land in 1869, and thereafter daily (Sundays excepted) has run its trains over the same, without paying or securing any compensation therefor to the plaintiff.

At the trial the plaintiff stated on cross-examination, that "the damage was finally referred to commissioners," meaning, we understand, that the company had taken the steps prescribed by its charter to acquire the right of way, which proceedings, it is stated by the appellant in its brief, were pending at the time of the occurrence in question.

Its charter, (*Laws of* 1855, *ch.* 24, *sec.* 507,) provides that the company may petition the district court for the appointment of commissioners to determine the compensation to be made to the owners of lands proposed to be taken for its purposes, for the taking or injuriously affecting the same; and whenever their report shall have become final, and any appeal therefrom should have been finally determined, the company upon payment of the amount awarded or assessed shall become seized of the title thereto, and entitled to the use and occupation thereof for said purposes. Till then the land is not taken, and the company acquires no rights therein; and if without the consent of the owner, the company build its road through the land, and run its cars over it, it is a trespasser in so doing. Its acts in so doing are a continuing trespass, every repetition of which gives a fresh cause of action. *Carli vs. Stillwater, &c., R. R.,* 16 *Minn.* 260; *Gray vs. 1st Div. St. P. & Pac. R. R.,* 13 *Minn.* 215; *Harrington et al. vs. St. P. & S. C. R. R.,* 17 *Minn.* 215; *Adams vs. Hastings & Dakota R. R., ante, p.* 260.

The company would be *prima facie* responsible, of course, for all the injury done to the land owner's property in the prosecution of its unlawful act, i. e. its trespass in breaking and entering his close with its engine and cars, and running

Mathews v. The St. Paul and Sioux City Railroad Co.

the same over and through it, including injuries to his cattle therein.

In the case at bar the defendant was *prima facie* a trespasser, that is to say, its entry upon the plaintiff's land on the day of the injury to his cow, and running over it with its engine and cars was *prima facie* without his consent, and against his will. The fact that the defendant had been operating the road for the length of time aforesaid, no more raises' of itself, any presumption that the running there on the day of this occurrence was with plaintiff's consent, than the first day's running raised a presumption of his assent to the second. If indeed it was there with plaintiff's consent, by his leave, it was no trespass, no injury to plaintiff. To say, however, for example, that an injury done *vi et armis* on every day in the year but the last, raises a presumption, or is evidence of a license to repeat it on the last day, is plainly absurd.

The defendant, being *prima facie* a trespasser, alleges, however, in its defence, that it went upon the said premises and constructed its said railroad thereon by and with the consent and license of the plaintiff, granting it permission to enter upon his said premises, and to construct its railroad thereon, and to run its cars and locomotives on said road. If so, it was rightfully there. The plaintiff's cow, however, was also rightfully there. She was not "running at large." She was on plaintiffs enclosed land, which, as appears from the evidence, was used for pasture, and so had been before the road was built through it.

On the supposition that defendant was there by license from plaintiff, the case of *Williams vs. Groncott,* 4 B. & S. 149, is in point. In that case it was held, that a person entitled to the minerals under the land of another, with license to make a mine shaft, opening into it, is, in the absence of any stipulation to the contrary, under a legal obligation to the owner of

VOL. XVIII.—56

the surface soil to fence the shaft so as to prevent it being a source of danger to his cattle which may be upon it, and is liable to an action for injury occurring to those cattle for want of such fencing. "Looking," says Mr. Justice Blackburn, "to the general rule of law that a man is bound to use his property, so as not to injure his neighbor, it seems to me that where a party alters things from their normal condition so as to render them dangerous to already acquired rights, the law casts upon him the obligation of fencing the danger, in order that it shall not be injurious to those rights."

If the law casts the duty upon this defendant to prevent its use with its trains of the plaintiff's land by his permission from injuring his cattle lawfully thereon, it is liable for any injury occurring to them through such use. The cattle were liable to go upon the track, and be injured by a passing train.

The theory of the defendant is that the plaintiff, knowing this, was guilty of negligence in leaving them in the pasture untended. This begs the question, which is, on whom does the law *cast the duty* of preventing the cattle from getting upon the track. If it is the duty of the defendant, it cannot be the duty of the plaintiff, and he cannot be chargeable with negligence for not doing it. *Rogers vs. Newburyport R. R.*, 1 *Allen*, 16.

It would be, of course, entirely immaterial, in this view of the case, that the defendant could not have avoided striking the cow, after she was seen. It was the defendant's duty to have guarded against her getting on the track. The defendant says that it was not obliged by its charter to fence its road. The answer is that this was not its road. The defendant was not there by virtue of its charter but by the permission of the plaintiff, to whom the land belonged, the road, no less than the rest.

It is also to be observed, that the law as to the rights and

duties (in respect of fencing) of railroad companies who, by purchase or otherwise, have acquired the right of way, is wholly inapplicable to this case.

These considerations dispose of the present case, for no evidence was offered in support of the other grounds of defence set up, viz.: that the defendant was legally upon the said premises, running its road thereon in pursuance of its charter, and owner of said road, and legally entitled to operate the same; that the cow was wrongfully upon the track, and that the injury was by plaintiff's gross negligence and carelessness. It may be added, too, that we do not think, upon the evidence, that the defendant proved the license set up in its answer as above mentioned.

The defendant had to satisfy the jury that it had the plaintiff's permission to run its trains over his lands. To do this, it called its engineer in charge of the construction of the road, who testified to a conversation between plaintiff and the president of the road, as to right of way, which took place, as he stated, before work was commenced. "Plaintiff said he did not know how he wanted to settle until the work was completed, as he did not know how it would affect him. The substance of the conversation was, that plaintiff told Drake to go on and do the work, and when it was done he would see how it would affect him, and then he would set the price. I saw plaintiff frequently as the work was progressing, and never heard anything different." He also testified that work was commenced on plaintiff's premises soon after this, and the construction of the road finished in August or September, 1869.

It is evident, from this testimony, that this conversation was in respect to the acquisition by the company, by purchase, of that right in and to plaintiff's land, which it must otherwise obtain by condemning the land under its charter. His

price is asked, and he says that for the reason stated, he cannot set one till the work is done, and, therefore, that the defendant may construct the road through his land, and when it is done he will tell him what he will sell for. This is a license to defendant to enter and construct the road, but that is all.

The statement that upon its completion he will name his price for the right to make, maintain and operate the road, excludes the inference of a license then granted to operate the road when completed, without paying such price, such price being presumptively a cash price. If this were all the evidence, we do not see how the jury could have found that such alleged license had been proved.

The plaintiff, however, testified as to the same matters. He states that prior to this interview he met the president at his request in Mankato ; that he then consented to the road being graded without the workmen being considered as trespassers, and that the president promised that he would pay the damage when the grading was done. " He came again and wanted to settle the matter and we could not agree. He proposed to leave it to two men, (Bass and Hewitt,) to settle it. I came down, but he would not leave it to them, as some one had told him that Hewitt was a friend of mine. I think this was after the grading was done." He also testified that he had never given the company permission to run its cars and locomotives through the land. " They never asked me to do it. I told Mr. Drake I wanted my pay the same day he was at my house."

On cross-examination he stated, that the interview testified to by the engineer was after the grading was nearly done, and that the substance of that conversation was " that they were to go on and complete the road, and then we could settle the damages. We never came to any agreement as to the price, and the damages were finally referred to commissioners. The

matter was never left to arbitration." He also stated, that he never forbade them to run their cars on his land.

We gather from this evidence, to all of which the jury were at liberty to give full credit, that this failure to allow the persons named to fix the amount of compensation, was the end of the negotiations for a purchase. The company thereafter (whether before or after the cars began to run does not appear) commenced proceedings *in invitum* against plaintiff under its charter to acquire the right of way.

We are unable to see upon what principle this is to be construed into a license from plaintiff to defendant to operate a railroad upon his land. The negotiations for a purchase, which the conversation testified to by the engineer contemplated, had fallen through, and all that was left was an authority to defendant to build its road through plaintiff's land without first paying the damages. The company then undertake to acquire from plaintiff by law, and against his will, the right to maintain and operate said road forever. That seems to exclude the idea of a license to operate it.

It is urged, however, that inasmuch as plaintiff had never forbidden the running of the cars, he had acquiesced in it. If silence gives consent in the present case, it must be because plaintiff is estopped by it. Mere silence, however, will never operate as an estoppel unless there are some special circumstances which make it a duty to speak. *Taylor vs. Ely*, 25 *Conn.* 250; *Hill vs. Epley*, 31 *Penn. St. Rep.* 23; *Colbaugh vs. Byerly*, 7 *Gill* (*Md.*) 384; 2 *Smith Lea. Ca. p.* 766.

None such are shown here. When the negotiations came to an end, both parties knew their respective rights and duties. The defendant knew that until it had acquired the rights which it thereupon undertook to acquire by legal proceedings, it was its duty to keep off plaintiff's land. It was not plaintiff's duty, therefore, to forbid its entry thereon, for silence

could not mislead the defendant. "To create an *estoppel in pais*, the party to be estopped must have clearly done, or omitted to do some act, or made, or omitted to make some declaration which has influenced the conduct of the party claiming the estoppel, and the act, declaration or omission must have been made to deceive or mislead the party who acted upon it. *Califf vs. Hillhouse*, 3 *Minn.* 311.

The case of *McCauley vs. Western R. R.*, 33 *Vt.* 314, a passage from the opinion in which the defendant cites, does not support its theory. That case holds, that while pre-payment is a condition precedent to the acquiring of title by a railroad company to lands taken for its road, this condition is for the benefit of the owner, and may be waived by him, even by parol, and that when he acquiesces in the occupation of his land for the construction of a railroad without pre-payment for land damages, upon an understanding or contract for future payment by the company, and the road is constructed and put in operation, he cannot afterwards, on failure to obtain payment, maintain ejectment or trespass for the land. That is to say, if he waives the condition, the title vests in the company. The company has the land, the owner has the company's contract to pay. Its subsequent breach of contract will not revest the title in him.

In the case at bar, there was no agreement or understanding for future payment. When the plaintiff at the first interview at his house, said he would set a price when the work was done, the president made no promise to pay that or any other sum; on the contrary his contention, according to the plaintiff, was that the plaintiff ought to give the right of way. After the grading was done, the parties failed to come to any understanding, and the defendant resorts to the law to acquire what it has not been able to obtain by gift or purchase, and that law makes pre-payment the condition of its acquisition.

Mathews v. The St. Paul and Sioux City Railroad Co.

In the case referred to, the court says, that if the plaintiff then had, " in any sense, even for the shortest period, clearly given the company, either by his express assent, or by his silence, to understand that he did not intend to object to its proceeding with its construction and operation, he cannot stop the work, and especially the trains."

The fact that the company in the case at bar commenced proceedings to acquire the right of way, sufficiently repels, whether they were commenced before or after the trains began to run, the idea that the plaintiff had clearly given it to understand, by silence or otherwise, that he acquiesced therein; for that acquiescence the court holds must be to the extent of not insisting upon the payment of the land damages as a condition precedent, but *continuing* to let the damages be and remain a mere debt; and it is not a supposable case that if this company had a clear understanding to that effect, that it would have gone to law.

By those proceedings, moreover, it declares to the plaintiff that it intends to take his land, at the date of the award, by a payment which will not include compensation for any past use and occupation thereof. *Proetz vs. St. P. Water Co.*, 17 *Minn.* 163. If it undertakes, without leave asked or payment or offer of payment therefor, to use it pending such proceedings, it cannot be misled therein by an omission on plaintiff's part to forbid it. The law forbids it for him.

At the trial the engineer was asked by the defendant whether the work was done on the understanding testified to by him; which was objected to by plaintiff, and the objection sustained and defendant excepted. The exception is not urged here, and it is sufficient to remark that as in our opinion the permission testified to did not authorize the operation of the

road when completed, it was immaterial whether or not it was built in accordance with and relying thereon.

Order appealed from affirmed.