EDWARD A. ZIEBARTH *vs.* ELI S. NYE and others.

February 14, 1890.

| 42 | 541 |
| 80 | 86 |
| 42 | 541 |
| 84 | 256 |

**Trespass upon Land—Single Cause of Action—Prospective Damages.**
Defendants unlawfully entered upon plaintiff's farm, and dug two parallel ditches, 30 feet apart, and threw up the earth between them into a turnpike, claiming (but erroneously) that the *locus in quo* was a public highway. *Held,* that these acts constituted a single trespass, and gave only a single cause of action, in which the plaintiff was entitled to recover all damages, present or prospective, resulting to the land from the trespass.

**Same—Measure of Damages.**—That the measure of damages would be the diminution of the value of the land by reason of the tortious acts.

**Same—Diminution in Value—Cost of Restoration.—**This difference in value is not to be estimated upon the basis that the strip of land is to be permanently devoted to highway purposes; nor is it necessarily to be estimated upon the assumption that the ditches and turnpike are always to remain; for, if it appears that the cost of restoring the land *in statu quo* would be less than the injury that would result to the land by letting the nuisance remain, such cost would be the amount by which the value of the land would be deemed to have been lessened. But the court cannot. assume that the cost of restoring the property would be less than the diminution in the value of the land from the trespass; if such is the fact, it is incumbent on the defendants to prove it.

**Same—Parties—Instructions.—**The court instructed the jury that the measure of damages was "the difference in the value of the farm with the ditches and turnpike and without them." *Held,* that as a general statement of the rule this was correct, and that if defendants desired more specific instructions to be given as to the basis upon which this difference in value was to be estimated, they ought to have so requested.

Appeal by defendants from an order of the district court for Grant county, *C. L. Brown,* J., presiding, refusing a new trial after verdict of $200 for plaintiff.

*J. W. Reynolds,* for appellants.

*C. M. Stevens,* for respondent.

MITCHELL, J. This was an action for damages for a trespass upon the land of plaintiff. The trespass complained of was excavating, for the length of half a mile across plaintiff's farm, two parallel ditches, 30 feet apart, and throwing the earth between the ditches, thus forming an embankment. The defence was that the *locus in quo* was a public highway, and that the act complained of was lawfully done, in building and grading the road. It is neither necessary nor practicable to follow appellants' counsel through his 50 assignments of error. The issues in the case were very simple, being—*first,* the existence or non-existence of a highway; and, *second,* if there was no highway, the amount of plaintiff's damages; and the determination of a very few general propositions will dispose of every question raised on this appeal.

1. The appellants attempted to prove the laying out of a highway under the statute, but utterly failed, and there is now no claim that

any road was ever legally laid out. The main contention of appellants on the trial was that the *locus in quo* had been used and kept in repair as a highway for six years continuously, and hence had become a public road, under the provisions of Gen. St. 1878, *c.* 13, § 47. In fact, they seem to have tried the whole case upon this theory, although the allegations of the answer are undoubtedly sufficient to admit of proof of a common-law dedication within six years. Very many of the assignments of error have reference to the exclusion of evidence offered for the purpose of proving a highway by six years' user or by common-law dedication. But an examination of the very voluminous record satisfies us of the following facts: *First.* Much of the excluded testimony was incompetent, under the most familiar rules of evidence. An example of this is the question repeatedly asked, viz.: "Was the road accepted and considered by the public authorities as one of the highways of the town?" *Second.* Much of the rejected evidence was in the form of "broad offers," parts of which might have been admissible, but other parts not, and hence the whole were properly excluded. *Third.* In some instances, perhaps, competent evidence was at one stage of the trial excluded, but we can find no instance of this kind where the same evidence was not admitted at some other time; so that, from the whole record, it appears that the competent evidence bearing either directly or indirectly upon the question of the user of the road by the public, or of the conduct of the plaintiff or the public authorities, and which could possibly have any legitimate bearing upon the issues in the case, was all admitted. Certain documentary evidence as to the abortive attempt to lay out the road under the statute, was excluded; but the appellants were permitted to prove the fact of such an attempt, and of a survey having been made on this line, and this was as far as it was competent for the purpose (if it could have any such effect) of characterizing the subsequent acts of the plaintiff or the public as bearing upon the question of dedication. Indeed, a reading of the record impresses us with the fact that the trial court acted with the greatest liberality towards the appellants in admitting everything, even of a collateral nature, that could have the remotest bearing upon the issues, and that

the jury were put in the fullest possession of the history and situation of affairs with reference to the alleged road.

2. Another line of assignments of error relates to the admission of evidence of injuries to the land which had not accrued at the commencement of the action or at the time of the trial. These assignments are all based upon the erroneous idea that this was in the nature of a continuing trespass or nuisance, which would give the right to bring successive actions for resulting injuries as they accrued. Such is not its character. The alleged trespass consisted of a single tortious act upon the land of the plaintiff, the result of which will continue without change from any cause but human labor; and the plaintiff, having no means to compel the defendants to remove the cause of the injury, can only cause it to be done, if at all, by the expenditure of his own means. This constitutes a single trespass, for which there is only a single right of action, and in that action the injured party is entitled to recover compensation for all damages to the property resulting from the trespass, whether present or prospective; and in respect to the latter, the rule is that he can recover for such as it is shown with reasonable certainty will. result from the wrongful act complained of. 1 Suth. Dam. 195, 196; 3 Suth. Dam. 372 *et seq.*; *Pierro* v. *St. Paul & N. P. Ry. Co.*, 39 Minn. 451, (40 N. W. Rep. 520.)

3. The appellants also complain that the charge of the court confined the consideration of the jury to the question whether the *locus in quo* had become a highway under the statute by six years' use, to the exclusion of the question of a common-law dedication within that period. It is undoubtedly true that it does not require any particular length of time to effect a common-law dedication. All that is required is an intention to dedicate, and an act of dedication on part of the land-owner, and an acceptance by the public. But, in view of the evidence in this case, it is difficult to see how there could have been any common-law dedication, if this had not become a highway under the statute by six years' use, etc., for, if there was ever any common-law dedication, it must have been effected more than six years before the alleged trespass. But, however this may be, it is immaterial how the court instructed the jury on that question, for the

evidence was wholly insufficient to have justified them in finding the existence of a public highway, either under the statute or by a common-law dedication. The case is exceedingly voluminous, containing nearly a thousand folios, and it is impossible to give anything like a summary of the evidence; but it is enough to say that it is altogether too indefinite, ambiguous, and equivocal to warrant the conclusion that this land had become burdened with any easement in favor of the public. Evidence of dedication of land for a highway must be cogent and persuasive. The intent to dedicate must be clear and unequivocal, showing an intention on part of the owner to appropriate or yield his property to public use. This was a new country, consisting of open, level prairie, for the most part uninclosed and unimproved, where the public had free and unobstructed course anywhere until the land was actually cultivated. The practice seems to have, been followed by the public of going wherever they found the best. travelling, without regard to lines or laid-out roads, and of changing the route of travel at different seasons of the year, according to the. condition of the soil; the land-owners apparently raising no objec-. tions as long as the land was unimproved. While there was some. travel in the proximity of the *locus in quo*, it does not appear that. there ever was a fixed or definite route upon the line of what is now claimed as a highway. On the contrary, whatever travel there was. seems to have been to the north of it, and to have deflected from a straight course wherever the character of the land rendered it convenient or desirable to do so.. No public work was ever done on plaintiff's land, and what was done half or three-quarters of a mile west was easily referable to a travelled road or track, running northeasterly to what is called the "old crossing," 80 rods north of plaintiff's farm. The strongest piece of evidence that we can find, tending to prove a dedication by plaintiff, is that, when the town authorities were considering the question of changing the road and laying out one on the line now in question, he was in favor of the change. Even as to this the evidence is conflicting; but the fact that a man was in favor of having a road laid out according to the statute across his land, when presumably he would receive compensation, is of itself little or no evidence that he intended to give, or subsequently gave,

the land for such a use for nothing. The same suggestion applies to the offer to prove that when the change of the road was being considered, Barrett, then the owner of 80 acres of the land now owned by plaintiff, made no objection to the change, and was willing that it should be made. In short, there was no sufficient evidence, either of a common-law dedication, or of a use and keeping in repair for six years required by the statute; and the court would have been entirely justified in directing the jury to find for the plaintiff, and assess his damages.

4. Under numerous assignments of error, counsel contends that, both in the admission of evidence and in his charge to the jury, the court erred as to the measure of damages, and proceeded upon the theory that they were to be estimated upon the basis that these ditches and embankment must remain there forever, and that this strip of land was to be permanently used for highway purposes. If the record shows this, the court undoubtedly erred; for nothing is clearer than that neither the title nor right to the permanent use of the property would pass to the public by the recovery of damages in this case. It is also clear that, if it appeared that the cost of restoring the land to *statu quo* by levelling the embankment and filling the ditches would be less than the difference in the value of the land occasioned by leaving them in their present condition, the cost of restoration would be the measure of damages. The case shows that the method pursued by the plaintiff on the trial was to examine his witnesses as to the character and size of the ditches, how they obstructed the use and cultivation of the farm, and how they gathered surface water from adjoining land and threw it upon that of plaintiff, and, finally, to ask them, in substance, "How much less is that farm worth with those ditches and turnpike than it was before?" or "How much less would it be worth from the making of the turnpike and ditches than it was before?" to which defendants objected as incompetent, and not the proper measure of damages. When defendants introduced rebutting evidence upon the question of damages, they asked the same questions of their witnesses; and neither in their own case, nor on cross-examination of plaintiff's witnesses, did they inquire what it

would cost to fill up the ditches, or introduce any evidence that the cost of doing this would be less than the damage to the land from letting them remain. The court instructed the jury that "the proper measure of damages was the difference in the value of the farm with the ditches and turnpike and without them. If there was no public highway, you will ascertain how much less the farm is worth with those ditches and the turnpike, if anything." To this defendants excepted generally, but requested no instruction upon the measure of damages.

As already stated, this being a single trespass, and the plaintiff being the owner of and in possession of the land, he was entitled to recover in this action all damages resulting from the injury, whether present or prospective, affecting the value of the land. As a general statement of the rule of damages, to wit, the difference in the value of the land, the questions propounded to plaintiff's witnesses and the charge of the court were correct. It is true that this difference in value was not to be estimated on the basis that this land was to be devoted permanently to highway uses, and it is equally true that, if the cost of restoring the land *in statu quo* would be less than the diminution of value that would result from letting the ditches and turnpike remain, the former, and not the latter, would be the real amount by which the actual value of the land would be considered as diminished. It is also true that neither the questions asked the witnesses, nor the charge of the court, defined the basis on which this difference in value was to be estimated; but it is not true, as defendants claim, that they assume an erroneous basis. The most that can be said is that they might be misunderstood. But, if counsel thought that witnesses were making their estimates on an erroneous basis, it was for him to ask the court to instruct them on the point, or develop their mistake on cross-examination; or, if he thought that the cost of restoring the land to its former condition would be less than the injury to the value of the land from letting the ditches and embankment remain, it was for him to show it. The court could not assume this to be so, in the absence of proof. *Karst* v. *St. Paul, S. & T. F. R. Co.*, 23 Minn. 401. See, also, *Seely* v. *Alden*, 61 Pa. St.

302.   Again, if counsel feared that the jury might adopt a wrong basis in estimating the difference in the value of the land resulting from the trespass, it was his duty to request the court to give them specific instructions on the point.   But if counsel had in mind during the trial this point which he now urges so prominently, he certainly omitted to bring it to the attention of the court, either in his examination of witnesses or in his requests to charge.   Therefore he cannot now successfully urge as error that the jury, for the lack of more specific instructions, might have adopted an erroneous theory in assessing the plaintiff's damages.

What has been said covers all the points which we deem worthy of special consideration.   We find no error in the record, and the result is that the order denying a new trial must be affirmed.