John Wesley HEBERT, et
al., Respondents,

v.

CITY OF FIFTY LAKES, Appellant.

No. A06–215.

Supreme Court of Minnesota.

Jan. 17, 2008.

Paul Donald Reuvers, Iverson Reuvers, LLC, for Appellant.

Scott Marshall Lucas, Thomas B. Olson & Associates, P.A., Edina, MN, for Respondents.

Susan Lynn Naughton, St. Paul, MN, for League of Minnesota Cities Amicus.

Thomas H. Boyd, Minneapolis, MN, for Builders Association Minnesota Amicus.

Jon William Morphew, Schnitker & Associates, P.A., Spring Lake Park, MN, for Eminent Domain Institute Amicus.

## OPINION

GILDEA, Justice.

This case arises from the construction of a gravel roadway that partially intrudes on respondent landowners' Torrens property. The landowners filed this action in 2005, seeking a declaratory judgment that they owned the property over which the road encroaches and that the City "has no right, title or interest in any portion" of the property. They also sought equitable relief in the form of ejectment and damages for trespass. Appellant City of Fifty Lakes brought a motion to dismiss the complaint for failure to state a claim. The district court dismissed the complaint on the grounds that the City acquired the property by de facto taking when the road was constructed and that the landowners' claims were time-barred. The court of appeals reversed and remanded in an unpublished decision. *Hebert v. City of Fifty Lakes*, No. A06–215, 2007 WL 582956 (Minn.App. Feb.27, 2007). Because we hold that the City did not acquire an interest in the property through a de facto taking and that the timeliness of the landowners' claims cannot be resolved as a matter of law on the pleadings, we affirm.

The following facts are taken from the complaint and documents referenced in the complaint. Respondent landowners own six property lots located along the south side of North Mitchell Lake Road in Fifty Lakes, Minnesota. The lots were registered in 1953, and a 66–foot–wide roadway was dedicated in 1954 when the plat was recorded. The City laid the gravel road at issue in this case in 1971, but the road as built deviated south from the platted and dedicated road and thereby encroached on respondent landowners' properties. The road invades each property, but the extent of the invasion varies from 29 feet up to 49 feet.

According to the complaint, the gravel road has been open and used by the public since 1971. The landowners demanded that the City remove the road from their property, but the City refused. The complaint does not allege, and the record does not disclose, when this demand was made.

The City moved to dismiss the complaint, contending that the City acquired the land in 1971 when the road was built and that the landowners' efforts to reacquire the land or sue for damages were barred by the statute of limitations. As indicated above, the district court granted the City's motion.

The court of appeals reversed and remanded. *Hebert*, 2007 WL 582956, at *6. The court held that the district court's determination that the City acquired the property by de facto taking was erroneous because "the degree of interference by the gravel road at the wrong location is not so substantial as * * * to constitute a taking in the constitutional sense." *Id.* at *4. The court also reversed the district court's decision that the statute of limitations barred the respondents' claims. *Id.* at *5. We granted the City's petition for review.

■ This case comes to us on review in connection with district court's decision to grant the City's motion to dismiss the complaint for failure to state a claim. When reviewing a case dismissed pursuant to Minn. R. Civ. P. 12.02(e) for failure to state a claim on which relief can be granted, the question before this court is whether the complaint sets forth a legally sufficient claim for relief. *Barton v. Moore,* 558 N.W.2d 746, 749 (Minn.1997). Our review is de novo. *Bodah v. Lakeville Motor Express, Inc.,* 663 N.W.2d 550, 553 (Minn.2003). We are to "consider only the facts alleged in the complaint, accepting those facts as true and must construe all reasonable inferences in favor of the non-moving party," the landowners in this case. *Id.*

## I.

We turn first to the City's claim that it acquired the property in 1971 through its construction of the road. The City argued to the district court that it acquired the property through de facto taking and by common law dedication. The district court did not reach the dedication question, but ruled that the City had acquired the property by de facto taking. The City does not press common law dedication on appeal, but contends it acquired an interest in the land under the de facto taking doctrine and by statutory dedication. We address each argument in turn.

### A. De facto Taking

■ A de facto taking is defined as a "taking in which an entity clothed with eminent-domain power substantially interferes with an owner's use, possession, or enjoyment of property." *Black's Law Dictionary* 1493 (8th ed.2004). The district court concluded that the City "dispossessed the [landowners] of their enjoyment

of this portion of their land for 34 years by physically appropriating it with a road used by the public on a regular basis." The court relied on *Brooks Investment Co. v. City of Bloomington,* 305 Minn. 305, 232 N.W.2d 911 (1975), to support its conclusion that the City had acquired the land in question.

■ In *Brooks,* we recognized that a governmental authority may acquire an interest in property by physical appropriation, even though no formal eminent domain proceeding has been initiated. *Id.* at 318, 232 N.W.2d at 920. We noted that this type of acquisition does not require an "official intention to acquire any property interest" and characterized such an acquisition as a de facto taking. *Id.,* 232 N.W.2d at 920 (quoting *Eyherabide v. United States,* 170 Ct.Cl. 598, 345 F.2d 565, 567 (1965)). A de facto taking "creates in the condemnor a protectable legal interest in the property which is equivalent to title by condemnation; the condemnor can be forced to compensate to the original owner of the property, but the owner cannot eject the condemnor nor can he require discontinuance of the public use." *Id.* at 319, 232 N.W.2d at 920.

The facts of *Brooks,* like those alleged in this case, involved a roadway that encroached on private property. *Id.* at 307, 232 N.W.2d at 913. We said in *Brooks* that a "substantial interference * * * so as to constitute a taking in the constitutional sense," occurred when the city built a street encroaching on the property in question. *Id.,* 232 N.W.2d at 920. We held that the city acquired an easement to the extent of the encroachment. *Id.,* 232 N.W.2d at 920. Relying on the rationale of *Brooks,* the City argued to the district court that it acquired title to the land at issue by de facto taking when it construct-

ed the gravel road in 1971.[1]

The landowners argue that *Brooks* does not apply to this case because their property is Torrens property. We did not discuss in *Brooks* whether the property at issue there was Torrens or abstract property. The parties have not brought to our attention, and our own research has not disclosed, any case where we have addressed whether Torrens property can be acquired via de facto taking. We turn to that question now and begin with a discussion of the Torrens system.

Minnesota adopted the Torrens system in 1901 as an alternative to abstract property ownership "to create a title registration procedure intended to simplify conveyancing by eliminating the need to examine extensive abstracts of title by issuance of a single certificate of title free from any and all rights or claims not registered with the registrar of titles." *Hersh Props., LLC v. McDonald's Corp.*, 588 N.W.2d 728, 733 (Minn.1999) (internal quotation omitted). Under the Torrens system, title is registered through judicial proceeding. *Id.* at 734. "[I]n order to maintain the reliability of certificates of title, certain subsequent transfers of title

and changes to the certificate must be made either by court order or by approval of the examiner of titles." *Id.* (citing Minn.Stat. §§ 508.58, 508.62, 508.68 (1998)).[2]

The Torrens Act does not specifically address whether Torrens property may be acquired via de facto taking. But Minn. Stat. § 508.02 (2006) contains two provisions that inform the analysis of that question. First, the statute provides that registration shall not operate to change "the right to take the land by eminent domain." *Id.* The statute thus makes it plain that the government may acquire title to Torrens property pursuant to an exercise of its eminent domain authority.

Second, the statute provides that registration "shall not operate to change or affect any other rights, burdens, liabilities, or obligations created by law and applicable to unregistered land except as otherwise expressly provided herein." *Id.* Section 508.02 then contains two express exceptions to this general rule, providing that "[n]o title to registered land in derogation of that of the registered owner shall be acquired by prescription or by adverse possession." *Id.*[3]

---

1. The court of appeals concluded that there was not a de facto taking under *Brooks* because, in contrast to *Brooks*, the City in this case laid "a mere gravel road" without any " 'valuable improvements.' " *Hebert*, 2007 WL 582956, at *4 (quoting *Brooks*, 305 Minn. at 318, 232 N.W.2d at 920). The court also noted that the road had not been made "permanent, by, for example, paving or curbing." *Id.* These distinctions are not persuasive. In *Brooks*, we did not focus on the value of improvements in finding a de facto taking. We focused instead on the nature of the government activity and found that utilizing a property for a public roadway was a de facto taking. 305 Minn. at 318–20, 232 N.W.2d at 920–21.

2. The Torrens Act "lists seven exceptions that encumber Torrens property in spite of their

failure to appear on the last certificate of title." *In re Collier*, 726 N.W.2d 799, 802 n. 1 (Minn.2007) (citing Minn.Stat. § 508.25 (2004)). One exception is for public highways. Minn.Stat. § 508.25(4) (2006); *see Anderson v. Birkeland*, 229 Minn. 77, 86, 38 N.W.2d 215, 221 (1949) ("Section 508.25(4) specifically provides that all rights in public highways upon the land shall remain unimpaired by Torrens registration proceedings."). The City has not argued that this exception applies. We therefore have no occasion in this opinion to determine the relevance, if any, of this exception to the facts of this case.

3. The two exceptions, acquisition of an interest by prescription and acquisition by adverse possession, have common elements. "The elements necessary to prove adverse possession are well established and require a showing

The language of the Torrens Act, together with the notice principles underlying the Torrens system, leads us to conclude that the City did not acquire the property at issue by de facto taking. We acknowledge that a de facto taking under the analysis in *Brooks* operates similarly to the government's acquisition by eminent domain. *Brooks*, 305 Minn. at 319, 232 N.W.2d at 920 (noting that "the de facto taking creates in the condemnor an interest equivalent to title by condemnation"). But a de facto taking implies the government's intent to take private property from the circumstances. *See id.* at 318–19, 232 N.W.2d at 920 (citing *Eyherabide*, 345 F.2d at 567, and recognizing that within the context of a de facto taking " 'a constitutional taking is implied' "). Indeed, in this case, the City argued to the district court that when it built the road in 1971 it "informally exercise[ed] its eminent domain powers."

We have said, however, that "statutes conferring compulsory powers to take private property are to be strictly construed." *Fairchild v. City of St. Paul*, 46 Minn. 540, 544, 49 N.W. 325, 326 (1891). A strict construction of the eminent domain authority in section 508.02 points to the conclusion that an intention to take Torrens property should not be implied from the circumstances, but that the government should express its intention to acquire Torrens property through initiation of formal proceedings under the eminent domain provision in Minnesota Statutes chapter 117 (2006).

■ The City's interpretation of the eminent domain provision in section 508.02 to include acquisition by de facto taking is also at odds with the notice principles that underlie the Torrens system. The purpose behind the Torrens system was to "simplify conveyancing" by allowing prospective purchasers to rely on the certificate of title as reflecting all interests in the land. *Hersh Props.*, 588 N.W.2d at 733; *see also Moore*, 282 Minn. at 519, 165 N.W.2d at 217 ("The obvious intent of the Torrens Act is to confer a conclusive title on the holder of a certificate."). Like the court action for registration of a certificate of title, the government's commencement of eminent domain proceedings results in a formal adjudication of rights to the land, with all interested parties receiving notice and an opportunity to be heard. *See* Minn.Stat. § 117.055 (2006) (describing petition and notice necessary to institute eminent domain proceedings); *Barfnecht v. Town Bd. of Hollywood Twp.*, 304 Minn. 505, 509, 232 N.W.2d 420, 424 (1975) (explaining that "[e]minent domain proceedings * * * provide private landowners with notice, due process of law, and the opportunity to secure just and fair compensation"). In contrast to the government's initiation of eminent domain proceedings, a de facto taking would operate informally in this case because there was no court action or formal process initiated by the City.

Finally, allowing the City to acquire the land at issue here by de facto taking would

that the property has been used in an actual, open, continuous, exclusive, and hostile manner for 15 years." *Rogers v. Moore*, 603 N.W.2d 650, 657 (Minn.1999). A prescriptive easement requires the same elements, but a difference exists "between *possessing* the land for adverse possession and *using* the land for a prescriptive easement." *Boldt v. Roth*, 618 N.W.2d 393, 396 (Minn.2000) (emphasis added). Whereas adverse possession operates to

divest title to the land at issue, "[r]ights of prescriptive easement in land are measured and defined by the use made of the land giving rise to the easement. * * * [A prescriptive easement] is a servitude imposed upon corporeal property, and it gives no title to the land upon which it is imposed." *Romans v. Nadler*, 217 Minn. 174, 181, 14 N.W.2d 482, 486–87 (1944).

operate in the same way as if the City acquired the land by adverse possession in that in both situations, a landowner is deprived of rights to land due to actions of another. *See Rogers v. Moore*, 603 N.W.2d 650, 657 (Minn.1999) (listing elements of adverse possession). Adverse possession, however, is an exception to the general proposition that Torrens property is subject to the same "burdens, liabilities, or obligations created by law" as unregistered property, because acquisition by adverse possession is specifically disallowed by the Torrens Act. Minn.Stat. § 508.02. We cannot ignore this legislative prohibition. *See* Minn.Stat. § 645.17(2) (2006) (noting that "the legislature intends the entire statute to be effective").

For all of these reasons, we hold that the City did not acquire an interest in the land at issue by de facto taking.[4]

### B. Statutory Dedication

▪▪▪ The City alternatively argues that it acquired the property through statutory dedication, pursuant to Minn.Stat. § 160.05, subd. 1 (2006) (the "user statute"), which provides:

> When any road or portion of a road has been used and kept in repair and worked for at least six years continuously as a public highway * * * it shall be deemed dedicated to the public to the width of the actual use * * *. This subdivision shall apply to roads and streets except platted streets within cities.

The landowners contend that the user statute does not apply because dedication by public use is a form of adverse possession, which is prohibited by the Torrens Act, Minn.Stat. § 508.02, and because the user statute contains an exception for "platted streets within cities."

The City did not argue to the district court that it acquired the land by operation of the user statute. The record therefore is not developed as to whether the statutory requirements of use and maintenance have been met in this case. *See* Minn.Stat. § 160.05, subd. 1 (noting that for dedication to apply the "road or portion of a road has [to have] been used and kept in repair and worked for at least six years continuously as a public highway"). Because the City did not press this argument below and the record is not adequately developed on the question of the applicability of the statute, we decline to consider the question of whether the City acquired rights to the land by operation of the user statute. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988) ("A reviewing court must generally consider only those issues that the record shows were presented and considered by the trial court in deciding the matter before it." (internal quotation omitted)).

In sum, we affirm the court of appeals' conclusion that the City did not acquire the property by de facto taking. We therefore remand the respondents' claim for declaratory judgment to the district court for further proceedings.

### II.

We turn next to the City's argument that the statute of limitations bars the landowners' claims for ejectment and trespass.

### A. Ejectment

▪▪▪ The City asserts that the landowners' claim for ejectment is time-barred

---

**4.** Our holding should not be misinterpreted to preclude owners of Torrens property from seeking compensation under the Takings Clause in either the United States or Minnesota Constitution. U.S. Const. amend. V; Minn. Const. art. I, § 13. This issue is not before us and we express no opinion on it.

by the 15–year statute of limitations set forth in Minn.Stat. § 541.02 (2006), which provides: "No action for the recovery of real estate or the possession thereof shall be maintained unless it appears that the plaintiff * * * was seized or possessed of the premises in question within 15 years before the beginning of the action." Section 541.02 is the adverse possession statute in Minnesota. *See Beer v. Minn. Power & Light Co.,* 400 N.W.2d 732, 736 (Minn. 1987).[5] As such, it cannot operate against Torrens property. *See* Minn.Stat. § 508.02.

As previously discussed, the City acquired no interest by de facto taking or by adverse possession when it built the road. To apply the statute of limitations to Torrens property in the way the City advocates would result in the City being able to accomplish indirectly—acquiring title to the property—what we held above it can not do directly. This would be an absurd result and one that the legislature surely did not intend. *See* Minn.Stat. § 645.17(1) (2006) (stating that courts may presume

that "the legislature does not intend a result that is absurd").

■ We affirm the court of appeals decision that the respondents' ejectment claim is not barred by the limitations period set forth in Minn.Stat. § 541.02, and remand this claim to the district court for further proceedings.[6]

### B. Trespass

■ We turn next to the landowners' claim for trespass. The City argues that the landowners' claim is barred by Minn. Stat. § 541.05, subd. 1(3) (2006), which provides that actions for "trespass upon real estate" shall be commenced within six years. The landowners do not dispute that the six-year limitations period governs, but they argue that the trespass is a continuing one, and as such they are permitted to recover damages for the interference with their property rights for the six-year period preceding the filing of this action. We therefore must determine whether the roadway operates as a permanent trespass, which occurred in 1971 when the City laid the gravel road, or a

---

5. The City relies on *Beer v. Minnesota Power & Light Co.,* where we recognized that a landowner does not have unlimited time within which to seek compensation for the taking of its land. 400 N.W.2d 732, 736 (Minn.1987). *Beer* does not resolve the issue in this case because it does not address Torrens property and because, as set forth above, we hold that the City did not acquire the property by de facto taking.

6. The inapplicability of section 541.02 to Torrens property does not however preserve an ejectment action in perpetuity. An action for ejectment seeks equitable relief, and as such may be subject to the equitable defense of laches. *See Gully v. Gully,* 599 N.W.2d 814, 825 (Minn.1999) ("[I]t is a maxim of equity that he who seeks equity must do equity") (internal quotation omitted). We have recognized that "a party is barred by laches when the delay is so long and the circumstances of such character as to establish a relinquish-

ment or abandonment of rights." *Corah v. Corah,* 246 Minn. 350, 357, 75 N.W.2d 465, 469 (1956). We have also applied the doctrine of laches in circumstances when there is no statute of limitations expressly applicable to the particular claim. *See, e.g., Lindquist v. Gibbs,* 122 Minn. 205, 208, 142 N.W. 156, 158 (1913) ("There is no statute of limitations that applies to such cases. * * * A party who comes into a court of equity must act with reasonable diligence, under all the circumstances, or he is chargeable with laches."). Finally, as the City notes, we have applied equitable principles to disputes involving Torrens property. *See In re Collier,* 726 N.W.2d at 808 (noting "that we have applied principles of equity when a result under the Torrens Act violates notions of justice and good faith."); *Finnegan v. Gunn,* 207 Minn. 480, 482, 292 N.W. 22, 23 (1940) ("Nothing in the Torrens system indicates that the ancient concepts of equity are not applicable * * *.").

continuing trespass. Unless the roadway operates as a continuing trespass, the limitations period lapsed after 1977 and the landowners are time-barred from seeking damages for trespass.

The test to determine whether the claimed trespass resulting from the construction of the road is permanent or continuing is "whether the whole injury results from the original wrongful act"— the construction of the gravel road in 1971—"or from the wrongful *continuance* of the state of facts produced by such act." *Bowers v. Mississippi & Rum River Boom Co.*, 78 Minn. 398, 402, 81 N.W. 208, 209 (1899) (emphasis added). In explaining the difference between an injury resulting from a permanent trespass and an injury resulting from a continuing trespass, we have stated:

> A permanent injury to real property * * * is one of such a character and existing under such circumstances that it will be presumed to continue indefinitely. A temporary, or continuing injury is one that may be abated or discontinued at any time, either by the act of the wrongdoer, or by the injured party.

*Worden v. Bielenberg*, 119 Minn. 330, 332, 138 N.W. 314, 315 (1912); *see also Beer*, 400 N.W.2d at 735 (holding that when "the interference with the property right and the damages occurred simultaneously" the injury is a single one and "not a series of recurring injuries"). If the future injury is preventable but the trespasser fails to take steps to avoid a recurrence, our jurisprudence confirms that the invasion constitutes "separate, recurring acts of trespass." *Heath v. Minneapolis, St. P. & S.S.M.R. Co.*, 126 Minn. 470, 474–75, 148 N.W. 311, 312 (1914) (concluding that a continuing trespass resulted from an embankment that caused diverted surface water to wash large deposits of sand onto the plaintiff's land).

Consequently, the resolution of the issue here centers on the nature of "the wrong complained of." *Worden*, 119 Minn. at 333, 138 N.W. at 315. If the wrong complained of is the act of the City in constructing the gravel road, the trespass is permanent. *See, e.g., id.* at 332, 138 N.W.2d at 315 (concluding that the act of making excavations in a street constituted a permanent trespass because "the wrong result[ed] from the completed act"); *Ziebarth v. Nye*, 42 Minn. 541, 542, 544, 44 N.W. 1027, 1027–28 (1890) (concluding that there was a single trespass where "[t]he alleged trespass consisted of a single tortious act upon the land of the plaintiff"— unlawfully excavating two parallel ditches on the plaintiff's farm and constructing an embankment). On the other hand, if the wrong complained of is some continuing or recurring intrusion onto the landowners' property, the trespass is continuing. *See, e.g., Bowers*, 78 Minn. at 403, 81 N.W. at 209–10 (concluding that the acts of the defendant in placing and maintaining piling in a river, which caused water, logs, and ice to drive upon the shore of the landowner's property, were in the nature of a continuing trespass); *Mathews v. St. Paul & Sioux City R.R. Co.*, 18 Minn. 434, 440–41 (Gil.392, 396–97) (1872) (concluding that the construction and operation of a railroad through the plaintiff's pasture constituted a continuing trespass in a suit involving injury to a cow); *Harrington v. St. Paul & Sioux City R.R. Co.*, 17 Minn. 215, 224–25 (Gil.188, 201) (1871) (concluding that a continuing trespass resulted from the construction of a railroad and the continuous operation of trains over the property of the plaintiffs, which interfered with their use and enjoyment of their premises and rendered access to the street inconvenient and unsafe); *see also Field–Escandon v. DeMann*, 204 Cal.App.3d 228, 251 Cal.Rptr. 49, 53 (1988) (concluding that

the "salient feature" of a continuing trespass "is that its impact may vary over time.").

The complaint alleges that "[t]he encroachment of the Roadway off of the Platted Street and onto Plaintiffs' Property constitutes a continuing trespass, which significantly and detrimentally affects the value of Plaintiffs' Property." Through the roadway, the complaint alleges that "Defendant has unlawfully entered, and continues to unlawfully enter, upon Plaintiffs' Property." The landowners allege that they "have contacted the Defendant demanding that it remove the Roadway from Plaintiff's Property, but Defendant has refused to do so." Finally, the landowners seek damages for what they allege to be a continuing trespass.

■ We are not bound by legal conclusions stated in a complaint when determining whether the complaint survives a motion to dismiss for failure to state a claim. *See Anspach v. City of Philadelphia, Dept. of Pub. Health,* 503 F.3d 256, 260 (3d Cir.2007) ("[L]egal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." (internal quotation omitted)); *see also Bell Atl. Corp. v. Twombly,* —— U.S. ——, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007) (explaining that a plaintiff's obligation to provide the grounds of its entitlement to relief "requires more than labels and conclusions"). But the question of whether a trespass is continuing is not always purely a question of law. *See Starrh & Starrh Cotton Growers v. Aera Energy LLC,* 153 Cal.App.4th 583, 63 Cal.Rptr.3d 165, 175 (2007) (finding that the issue of whether trespass generally is continuing or permanent was a question of fact for the jury).

The landowners rely on *Northern States Power Co. v. Franklin,* 265 Minn. 391, 122 N.W.2d 26 (1963), to support their claim that the presence of the road on their property constitutes a continuing trespass and that the statute of limitations thus has not run. *See also Forsythe v. City of South St. Paul,* 177 Minn. 565, 570, 225 N.W. 816, 818 (1929) ("For such continuing injuries it is well established in this state that damages may be recovered within the six-year period."). *Franklin,* like this case, came to us in the posture of a motion to dismiss. 265 Minn. at 392, 122 N.W.2d at 28. We concluded that the district court had erred in dismissing the trespass claim on the pleadings. *Id.* at 398, 122 N.W.2d at 31. *Franklin* compels the same conclusion here.

In *Franklin,* Northern States Power Company erected two steel electric transmission line towers in 1952. 265 Minn. at 392–93, 122 N.W.2d at 28. Approximately 10 years after the towers were constructed, the power company brought suit to reform the easement so that it would include the land upon which the company erected the towers and the landowner counterclaimed for trespass. *Id.* at 393, 122 N.W.2d at 28. The landowner demanded that the towers be removed because they encroached on its land and were not constructed within the scope of an easement granted by the prior owner of the land. *Id.,* 122 N.W.2d at 28. The district court dismissed the trespass counterclaim because the towers were in existence and visible when the landowner bought the land. *Id.* at 394, 122 N.W.2d at 29. On appeal, the power company argued that the landowner could not maintain an action for trespass "because it was not in possession [of the land] when the trespass was complete." *Id.* at 397, 122 N.W.2d at 30.

Because of the procedural posture of *Franklin,* coming to us on a motion to dismiss the trespass counterclaim without a developed "factual foundation," we held that we could not resolve the issue of

continuing trespass. 265 Minn. at 397, 122 N.W.2d at 31. Critical to our conclusion was the landowner's allegation that it had "alleg[ed] a demand for removal of the structures." *Id.* at 397, 122 N.W.2d at 30. With this demand, the landowner "consent[ed] to an entry upon the land" and because of that consent, "the failure to remove the structures, rather than the original entry, characterizes the wrong and supports [a] theory of a continuing trespass." *Id.* at 397, 122 N.W.2d at 30. Importantly, we said that "[t]he problem of whether the trespass is continuing, or a single permanent trespass * * * depends on the character of the invasion and the structures erected; and this problem, as well as the problem of the measure of damages to be applied, is essentially one of proof." *Id.* at 397, 122 N.W.2d at 31. Accordingly, we remanded the counterclaim to the district court for further proceedings. *Id.* at 398, 122 N.W.2d at 31; *cf. Alevizos v. Metro. Airports Comm'n,* 298 Minn. 471, 494 n. 6, 499, 216 N.W.2d 651, 666 n. 6, 668 (1974) (reversing dismissal of complaint and noting that overflights and near-flights that constitute a taking may also be considered a continuing tort).

*Franklin* is dispositive of the limitations issue on the landowners' trespass claim as it is presented to us. Just as the complaint in *Franklin* alleged that the landowner made a demand, so does the complaint allege that the landowners made a demand in this case. And the record here, just like the record in *Franklin*, is not developed as to the "character of the invasion" caused by the road.[7]

7. The City cites our decision in *Ziebarth v. Nye,* 42 Minn. 541, 44 N.W. 1027 (1890), to support its claim that the statute of limitations for bringing a trespass claim has lapsed. We noted that the trespass in that case "consisted of a single tortious act upon the land of the plaintiff, the result of which will continue without change from any cause but human

Because we cannot make a determination on the record before us—where the factual allegations of the complaint must be accepted as true—whether there is a continuing trespass, we remand the claim to the district court for further proceedings.

Affirmed.

labor." *Id.* at 544, 44 N.W. at 1028. But *Ziebarth* came to us after a trial, and the record was completely developed as to the character of the trespassing activity. Accordingly, it is not helpful in resolving the nature of the trespass as a matter of law based on the pleadings alone.