In the Matter of Condemnation by the **MINNEAPOLIS COMMUNITY DEVELOPMENT AGENCY OF CERTAIN LANDS IN THE CITY OF MINNEAPOLIS.**

**MINNEAPOLIS COMMUNITY DEVELOPMENT AGENCY, Respondent,**

v.

**The ITASCA COMPANY, et al., Defendants,**

**Itasca Condominium Association, Inc., Respondent,**

**Cowles Media Company, Appellant.**

No. C2-86-1597.

Court of Appeals of Minnesota.

April 7, 1987.

Mary G. Dobbins, Larry M. Wertheim, Robert G. Lindall, Holmes & Graven, Minneapolis, for Minneapolis Community Development Agency.

James R. Schwebel, Schwebel, Goetz & Seiben, Minneapolis, for Itasca Condominium Ass'n, Inc.

Morris M. Sherman, Gregory C. Brown, Lawrence J. Field, Leonard, Street & Deinard, Minneapolis, for Cowles Media Co.

Heard, considered, and decided by LANSING, P.J., and WOZNIAK and NIERENGARTEN, JJ.

## OPINION

WOZNIAK, Judge.

Cowles Media Company (Cowles) appeals from the trial court's injunction ordering it to construct an underground pedestrian walkway over the Bassett Creek Tunnel in Minneapolis. The motion for the order was brought by respondent Minneapolis Community Development Agency (MCDA) to enforce a provision of a stipulation wherein Cowles agreed to build the walkway. We reverse and remand.

## FACTS

This action relates to a condemnation proceeding initiated by the MCDA in June 1985. It filed a petition to acquire certain property, located in Minneapolis near the Itasca Building and the Bassett Creek Tunnel, which would then be conveyed to Cowles for construction of a new printing plant. The Itasca Building is a converted warehouse containing residential condominium and commercial space. Several interested parties objected to the condemnation, including several condominium residents, who were represented by respondent Itasca Condominium Association (ICA). To re-

solve the objections, five hearings were held before the trial court, after which an eight-party stipulation was executed on October 11, 1985. Among other things, Cowles agreed to construct an underground parking garage and a pedestrian walkway connecting the garage to the Itasca Building. The ICA was not a party to this stipulation, but later, on April 23, 1986, it entered into a stipulation with the MCDA and Cowles, wherein Cowles again agreed to construct the garage and walkway.

Initially, the garage and walkway were to be located over the Bassett Creek Tunnel. Cowles retained an architect, Victor Zeuthen, to design the structures. Zeuthen believed the construction would not involve pilings for support. He consulted Walker Parking Consultants, however, which recommended that the garage be supported by pilings. Cowles then retained Twin City Testing to determine whether pile driving would harm the tunnel. Twin City Testing reported that the tunnel was susceptible to vibrations from pile driving, but that more tests were needed to determine whether the tunnel was susceptible to collapse under the vibration level associated with pile driving.

On May 23, 1986, Cowles informed the MCDA that construction over the tunnel posed a risk of collapse. Cowles subsequently offered the MCDA the following alternatives: (1) Cowles would redesign the garage site so it did not lie over the tunnel, but it would build the walkway over the tunnel if no other solution could be worked out and if Cowles were held harmless for any damage; (2) Cowles would proceed with the construction as planned if the city first repaired the tunnel and held Cowles harmless for any damage; or (3) Cowles would deposit money for the construction in escrow in exchange for a release of its obligation. The MCDA rejected these alternatives and moved the trial court for an order compelling Cowles to construct the garage and walkway as originally planned.

Hearings were held on August 11 and 22, 1986, at which time Cowles submitted four affidavits. Len Kremer, the consulting engineer to the Bassett Creek Water Management Organization, stated in his affidavit that the tunnel had deteriorated severely beneath the proposed location of the walkway and that the tunnel could possibly collapse even without any construction. Kremer considered the construction unreasonable and unjustified. Attached to his affidavit was a report prepared in 1983 by the U.S. Army Corps of Engineers which stated that the Bassett Creek Tunnel was in a general state of disrepair and that failure of any section during a flood would cause catastrophic flooding in Minneapolis.

Jorg Eschway, a project manager for Kraus-Anderson Construction Company, recommended in his affidavit that Kraus-Anderson not participate in the construction because there were too many known risks. Eschway based his recommendation on, among other things, the report from Twin City Testing which said the tunnel was susceptible to vibrations caused by driving pilings into the ground near the tunnel. The report was attached to Eschway's affidavit. He also noted that drawings of the tunnel, prepared by representatives from the City of Minneapolis, showed deterioration on both sides of the tunnel below the proposed location of the walkway.

After the first hearing on August 11, 1986, the trial court issued an order directing Cowles to build the garage, but at a location not lying over the tunnel. The court reserved ruling on the location of the walkway. No appeal was taken from this order.

At the continued hearing on August 22, 1986, Victor Zeuthen, the architect who designed the garage and walkway, told the court of three alternative designs for the walkway. The first two designs involved constructing the walkway over the tunnel, which, Zeuthen said, was less risky than putting the whole garage over the tunnel, but which still meant "significant construction over the top of this tunnel." Terrence Hakkola, a structural engineer with Walker Parking Consultants, stated in his affidavit that both proposed designs for build-

ing the walkway over the tunnel created a risk of damage to the tunnel.

On September 8, 1986, the trial court noted that the situation was appropriate for injunctive relief and, finding that construction of the pedestrian walkway would not create a risk of major flooding or a danger to public health and safety, it ordered Cowles to construct the walkway over the tunnel.

### ISSUE

Did the trial court abuse its discretion in granting a mandatory injunction ordering Cowles to begin construction of a pedestrian walkway?

### ANALYSIS

■■■ A mandatory injunction commands the doing of a positive act by the defendant. *See Bellows v. Ericson,* 233 Minn. 320, 325–26, 46 N.W.2d 654, 658 (1951). Mandatory injunctions are generally governed by the same rules that apply to preventive injunctions. *Compare Hideaway, Inc. v. Gambit Investments, Inc.,* 386 N.W.2d 822, 824 (Minn.Ct.App.1986) (discussing the conditions that must be satisfied before a mandatory injunction will issue) *with AMF Pinspotters, Inc. v. Harkins Bowling, Inc.,* 260 Minn. 499, 504, 110 N.W.2d 348, 351–52 (1961) (discussing the same conditions for a preventive injunction). Some irremediable damage must be shown before an injunction will issue. *Independent School District No. 35 v. Engelstad,* 274 Minn. 366, 370, 144 N.W.2d 245, 248 (1966). The moving party must show that its legal remedies are inadequate and that "the injunction is necessary to prevent great and irreparable injury." *Cherne Industrial, Inc. v. Grounds & Associates, Inc.,* 278 N.W.2d 81, 92 (Minn. 1979). Where an injunction requires affirmative acts in performing a contract, the relief should be sparingly granted. *Bennett v. Fox Film Corp.,* 149 Minn. 88, 90, 182 N.W. 905, 906 (1921).

Here, the trial court noted that the situation was appropriate for injunctive relief and ordered Cowles to begin construction

of the pedestrian walkway. The court did not specifically address the conditions which must be satisfied before an injunction will issue. The court only found that the construction would not "create a risk of major flooding or a danger to public health and safety." Cowles argues that the court's finding is without evidentiary support and that the court abused its discretion in ordering the construction of the walkway. We agree.

■■■ The trial court has discretion to grant or deny an injunction, and its action will not be disturbed on appeal unless, based upon the record as a whole, it appears there has been an abuse of such discretion. *Cherne Industrial, Inc.,* 278 N.W.2d at 91. An abuse of discretion occurs, however, when the grounds for issuing the injunction are not supported by the evidence. *See, e.g., Rosewood Mortgage Corp. v. Hefty,* 383 N.W.2d 456, 460 (Minn. Ct.App.1986).

On the motion, the trial court heard arguments from counsel for the parties. The court also questioned the architect who designed the walkway. No sworn testimony was taken. The court had before it, however, the affidavits from Jorg Eschway, Victor Zeuthen, Len Kremer, and Terrence Hakkola, as well as the reports from the U.S. Army Corps of Engineers and Twin City Testing. The affidavits all discuss the danger that the construction poses to the tunnel.

The MCDA and the ICA argued that Cowles had built its printing plant near the tunnel without its collapsing. They also noted that earthmoving equipment had worked right up to the tunnel without adverse consequences. Neither party, however, offered any evidence refuting the affidavits which Cowles presented to the court. Indeed, the MCDA and the ICA argued not so much the danger of the construction, but rather that Cowles was obligated by the terms of the stipulation to proceed with the construction, even if it meant making the necessary repairs to the tunnel before building the walkway. The

trial court, however, did not address this issue.

 The narrow question before this court is whether the trial court erred in granting an injunction. Based upon the record, the evidence simply does not support the court's finding which was the basis for issuing the injunction.

### DECISION

Reversed and remanded.